THE FIRST NATIONAL BANK OF BOSTON, SPECIAL ADMINISTRATOR OF THE ESTATE OF MARY B. LONGYEAR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 36438, 46583. Promulgated January 20, 1932.

*Harold S. Davis, Esq., Francis V. Barstow, Esq.,* and *R. Ammi Cutter, Esq.,* for the petitioner.

*James L. Backstrom, Esq.,* for the respondent.

254

OPINION.

MURDOCK: The decedent always made her income-tax returns on the basis of cash receipts and disbursements for a calendar year. She used this method in reporting her income for the year 1924. The first question is, Should an amount of $90,000, representing distributions which she received prior to January 1, 1924, from the executors of the estate of her deceased husband, be included in her gross income for 1924? The respondent concedes that the period of administration or settlement of the estate of the deceased husband continued throughout the period here involved. He points

to the fact that the estate of the deceased husband had a fiscal year which ended March 31, 1924, and these distributions were income of that estate for that fiscal year. From these facts he argues that the beneficiary, who had a different taxable year from that of the estate, was required to return the amount received from the estate for her taxable year in which the taxable year of the estate ended, that is, for the year 1924. The principal trouble with this contention is that it finds no support in the Revenue Act of 1924, which controls the question of the petitioner's income-tax liability for the year 1924. See section 219 of the Revenue Act of 1924. This was the kind of income mentioned in section 219 (b) (3). If, instead, it had been the kind of income mentioned in section 219 (b) (2), then the respondent's contention would be correct, for section 219 (e) provides:

If the taxable year of a beneficiary is different from the estate or trust, the amount which he is required, under paragraph 2 of subdivision (b) of this section, to include in computing his net income shall be based upon the income of the estate or trust for its taxable year ending within his taxable year.

The fact that such a specific provision was made in this section of the act affecting the one kind of income and that there is no similar specific provision affecting the other, indicates very clearly that Congress intended that the kind of income here involved was to be reported by the beneficiary in accordance with the usual method used by her in reporting her income. That method was to report only cash received. Having received none in 1924, none had to be reported.

Section 219 (d) of the Revenue Act of 1921 provided that a beneficiary who had a taxable year different from that of the estate was to report, as income for his taxable year within which the taxable year of the estate ended, any income of the estate during the period of administration or settlement which the fiduciary was permitted to deduct. Thus, if this act were controlling in the present case, the contention of the respondent would be correct. However, as we have said before, not the Revenue Act of 1921, but the Revenue Act of 1924 is controlling here. Congress made a change in the later act from what it had provided in the earlier act. Due to this change some income may escape taxation, but this fact is immaterial. The provisions of the later act are clear, and the method of reporting income on the cash basis is well established. The Commissioner erred in including the $90,000 in the decedent's income for 1924.

In discussing the remaining question, which has to do with the right of the decedent to deduct certain contributions made in each year, we will describe, in part at least, the various exhibits attached to the stipulation. Mary B. Longyear was a party to two trust

instruments dated January 18, 1923, referred to in the stipulation as Exhibit A. The one created a trust known as the Longyear Foundation. In the other she assigned $5,000 to trustees and provided that they should pay the income of the trust to the Longyear Foundation. She retained for herself alone the power at any time to revoke both of these trusts and to require the trustees to convey and assign to her all property held by them.

On February 18, 1924, she exercised this power by notifying the trustees to terminate the trusts and deliver the entire trust property to her. (Exhibit B.)

On February 18, 1924, she was a party to two new trust instruments. (Exhibit C.) The one created a trust known as the " Eddy Historical Society." In the other she assigned to trustees the property received by her from the revocation of the earlier trusts, and provided that they should pay the income of the trust to the Eddy Historical Society. She retained for herself alone the power at any time to revoke both of these trusts and to require the trustees to convey and assign to her all property held by them.

On April 5, 1926, she exercised this power by notifying the trustees to terminate the trusts and deliver the entire trust property to her. (Exhibit D.)

On April 5, 1926, she was a party to two new trust instruments. The one created a trust known as the Longyear Foundation, and the other created a trust known as the Endowment Trust. In the latter she assigned to trustees $5,000 par value of bonds, being the property received by her from the revocation of the earlier trusts, and provided that these trustees should pay the income of the trust to the Longyear Foundation. She retained for herself alone the power at any time to alter, amend, cancel or revoke both of these trusts and to require the trustees to convey and assign to her all property held by them.

On July 21, 1924, she altered the Eddy Historical Society Trust.

On August 17, 1927, and again on December 11, 1928, she executed amendments to each trust then in effect, the Longyear Foundation and the Endowment Trust. In the amendments made on the latter day she provided that the Endowment Trust was irrevocable and not subject to alteration or amendment, and also that the Longyear Foundation was not subject to revocation or alteration by Mary B. Longyear, but might be amended by two-thirds of the trustees.

The trust instruments dated April 5, 1926, and the amendments of August 17, 1927, and December 11, 1928, are part of Exhibit E attached to the stipulation.

The petitioner claims that Mary B. Longyear had a right to deduct from her gross income certain contributions made by her in each of

the three years. It bases its claim upon the following provisions of sections 214(a)(10) of the Revenue Acts of 1924 and 1926:

SEC. 214. (a) In computing net income there shall be allowed as deductions:

\*  \*  \*  \*  \*  \*  \*

(10) Contributions or gifts made within the taxable year to or for the use of: \* \* \* (B) any corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, \* \* \* no part of the net earnings of which inures to the benefit of any private shareholder or individual.

The contributions in question are not deductible under these sections of the revenue acts for a number of reasons, which become obvious upon an examination of the provisions of the various trust instruments. The stipulation shows that Mary B. Longyear created three pairs of trusts. Each trust, at all times material hereto, was revocable at the will of Mary B. Longyear. Thus, she could take to herself at any time the benefit of the net earnings of any or all of the six. The requirement that the trust be one " no part of the net earnings of which inures to the benefit of any private \* \* \* individual," eliminates each of these trusts.

Parties may not stipulate a conclusion of law which it is the province of the Board to decide. *Ohio Clover Leaf Dairy Co.,* 8 B. T. A. 1249; 9 B. T. A. 433; affd., 34 Fed. (2d) 1022; certiorari denied, 280 U. S. 588. When Mary B. Longyear revoked a trust the property was hers to do with as she pleased  Her pleasure happened to be to transfer the property to a new trust. If the stipulation that " none of the property comprising said trusts was received by Mrs. Mary B. Longyear for her personal use " is intended to be to the contrary, we refuse to be bound by it. The stipulation offends similarly in another instance relating to the first point, but the facts stipulated lead us to the same conclusion which is stipulated. The stipulation is so drawn that we can not tell to which trust any certain contribution of 1924 was made. The same is true of 1926. This failure of proof is not very important. However, if any part of the contribution for either year was made to a trust revoked within the year, so that the money was returned to the donor within the year, the donor would certainly not be entitled to deduct the amount on her return for the year.

The principal purpose of one of each pair of trusts seems to have been to hold property and pay the income therefrom to the other. The contributions were made to the latter, according to the stipulation. We may assume that each of the latter three was organized and operated for one or more of the purposes mentioned in section 214 (a) (10). But there were other purposes for which each was organized. The trust created on January 18, 1923, known as the Longyear Foundation, had as part of its purpose:

To pay the said net income or such part thereof as they may from time to time deem expedient to trustees under a certain declaration of trust entitled "Assignment and Declaration of Trust, Zion Research Foundation" dated March 19, 1920, to be by said last mentioned trustees administered as part of the income of said last mentioned trust; and to apply said net income to such other charitable purposes as said Mary Beecher Longyear may from time to time during her life in writing or by her last will direct.

We do not know that the Zion Research Foundation Trust was one which met the requirements of sections 214(a)(10) of the Revenue Acts of 1924 and 1926, nor do we know that the other charitable purposes which Mary Beecher Longyear might direct would not be broader than those set forth in section 214(a)(10). *Genevieve Tucker*, 2 B. T. A. 796; *Sophia G. Coxe*, 5 B. T. A. 261; *Adam Ortseifen*, 14 B. T. A. 1403.

The operating trust created on February 18, 1924, was originally known as Eddy Historical Society, but on July 21, 1924, the name was changed to Longyear Trust. This trust provided that the trustees should devote the net income received to the maintenance and upkeep, including taxes and repairs, of Mary Beecher Longyear's residence at 60 Leicester Street, Brookline, Massachusetts, and certain other houses owned by her; to furnishing all of the above mentioned houses; to caring for certain books then owned by Mary Beecher Longyear; to keeping her residence in condition; and to the maintenance therein of a competent housekeeper and staff of servants suitable and necessary for such an establishment. It also provided that the trustees should permit the Zion Research Foundation to use certain rooms, and should care for and clean those rooms and employ a certain individual at a salary of $8,000 as superintendent of grounds and garage and as general agent. The situation after April 5, 1926, and up to the end of the year 1926 was not materially different. The Longyear Foundation of April 5, 1926, contained provisions similar to those which we have just enumerated. The houses and the books mentioned in these two trusts belonged to Mary B. Longyear and not to the trusts. She expressly provided that title in her should not be affected. One of the houses was her residence, in which she lived up to the time of her death. Thus, one of the express purposes of each of these trust instruments was to maintain her own residence, including the grounds and garage, in good repair, pay the taxes on this residence and employ and pay a competent corps of servants for the establishment. Cf. *Herbert E. Fales*, 9 B. T. A. 828; *Frederic C. Leubuscher, Executor*, 21 B. T. A. 1022; *St. Louis Union Trust Co. et al., Executors*, 21 B. T. A. 1201. These trusts, having these purposes, were not organized exclusively for the purposes mentioned in section 214(a)(10). Therefore, none of the contributions to these trusts were deductible.

We have not been informed as to the method of operation of any of the six trusts here involved. This alone would defeat the petitioner's claim, for we can not assume that the trusts were operated exclusively for charitable, religious, and like purposes to the exclusion of the other purposes for which they were created. After the last taxable year here involved Mary B. Longyear changed the two trusts then in existence so that she could no longer revoke either of them at will, but this circumstance, in our opinion, is immaterial in the decision of this case. There are other features of these trusts which take them out of the class mentioned in section 214(a)(10), but we see no reason to prolong this discussion, inasmuch as the decision on this point must be for the respondent in any event.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*