Estate of Charles D. Murphy (Deceased), Donor, E. B. McDaniel, Jr., Special Administrator, Ad Colligendum, et al. * v. Commissioner. Estate of Charles D. Murphy v. Commissioner
Docket Nos. 34828-34831.
United States Tax Court
1954 Tax Ct. Memo LEXIS 330; 13 T.C.M. (CCH) 17; T.C.M. (RIA) 54022; January 14, 1954
*330 Held, gifts to a fraternal association were made in trust for charitable purposes and, consequently, are exempt from gift taxation under section 1004 (a) (2) (B), I.R.C.
Lawrence Dumas, Jr., Esq., and M. C. O'Neal, Esq., for the petitioners. S. J. Levison, Esq., for the respondent. *331 BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined the following deficiencies and penalty in the gift taxes of Charles D. Murphy, now deceased: 25% Penalty for
Failure to Timely
File Return
(Sections 1018,
Year
Deficiency
3612(d)(1))
1945
$4,755.00
$1,188.75
1947
9,279.00 He has asserted the deficiencies and penalty against the decedent's estate (Docket No. 34828), and against the following donees, as transferees under section 311 (a) (1), I.R.C.: Irene Moody (Docket No. 34829), Dothan Masonic Fraternal and Benevolent Association (Docket No. 34830), and E. G. McDaniel, Jr., Trustee, (Docket No. 34831). The only issue raised by the pleadings in the aforementioned four dockets is the liability of the deceased donor, the donees conceding that they are liable as transferees if the Commissioner's determination against the donor is found to be correct. The deficiencies in 1945 and 1947 result from the Commissioner's determination that gifts of cash and remainder interests in realty to the Dothan Masonic Fraternal and Benevolent Association are not exempt from taxation as "charitable" *332 gifts under section 1004 (a) (2) of the Code. The Commissioner also made the following adjustments for 1947: (1) increased the value of life interests in real estate given to Irene Moody, and (2) disallowed the $3,000 exclusion claimed under I.R.C., section 1003 (b) (3) for gifts to E. B. McDaniel, Jr., trustee, since those gifts were of future interests. Petitioners do not contest these latter adjustments and, if it is determined that the gifts to Dothan Masonic Fraternal and Benevolent Association are exempt from taxation, those adjustments alone will not result in a deficiency. Findings of Fact Charles D. Murphy (hereinafter referred to as the donor) was, until his death in 1948, a resident of Dothan, Alabama, and his gift tax returns for 1945 and 1947 were filed with the Collector of Internal Revenue for the District of Alabama. His return for 1945 was filed by the administrator of his estate on November 30, 1950. Donor was born on October 24, 1879. From 1906 until his death, a period of over forty years, he had been extremely active in Masonic work and had held a variety of offices in the different Masonic bodies at Dothan. When he died he was Illustrious *333 Grand Master of the Masonic Grand Council of the State of Alabama. On June 24, 1930, the Dothan Masonic Fraternal and Benevolent Association (hereinafter referred to as the Association) was incorporated as a nonbusiness corporation, for the purpose of promoting knowledge and benevolence and for other like purposes, under sections 7167 through 7192 of the Code of Alabama of 1923, as amended. It was never chartered by the Grand Lodge of the Masons. During the years in issue the Association was run by four trustees, each one of whom was elected by one of the four Masonic lodges in Dothan. The operations of the Association consisted of performing the following functions as trustee for the four lodges: (1) constructed and held title to the Masonic Temple, and its contents, used by the lodges for meetings and other functions, (2) rented the first floor of the Temple to a business college, (3) planned, administered, and supervised repairs, alterations and improvements of the Temple, and (4) raised money to pay off the indebtedness on the Temple. On November 30, 1931, the Commissioner exempted the Association from income taxes, under the forerunner of section 101 (14) of the Code, as a corporation *334 organized exclusively to hold title to property and turn over the entire net income therefrom to an organization which was itself exempt from income taxes under that section. In his letter of exemption the Commissioner, among other things, stated: "Evidence submitted discloses that your organization was organized during 1930 under broad powers but that its activities consist of holding the title to property for the Masonic Fraternal Association of Dothan. It is shown that no activities other than the holding of title to real estate and cash being accumulated for the purpose of building a Masonic temple for the use of the Masonic bodies of Dothan are engaged in. Capital stock has been issued upon which no dividends are paid. None of your income inures to the benefit of any private member or individual." On July 7, 1945, donor went to the office of Arthur D. Ussery, his insurance agent and a trustee of the Association. Donor then and there changed the beneficiary of three of his life insurance policies, naming the Association as the new beneficiary and stating to Ussery that the gifts of the policy proceeds were for charitable purposes. Donor said that he was making the Association *335 the beneficiary, rather than the Masonic lodge of which he was a member, because the Association trustees were elected for longer terms than the lodge officers and were elected for their ability and efficiency in Masonic work. The taxability of those gifts of insurance policy proceeds is not here in issue. On September 28, 1945, the donor, along with Ussery, W. J. Renfroe, and J. S. Talley, three of the Association trustees, went to the First National Bank of Dothan. Donor also wished J. W. Blakey, the remaining trustee, to accompany him but Blakey could not be reached. At the bank donor drew a certified check for $80,000 on his account making it payable to the Association. The $80,000 was deposited in a special account in the Association's name at that bank and, pursuant to donor's desires, could only be withdrawn upon the signatures of the four trustees or their duly elected successors. At the time of making the gift donor stated that he wanted to do something, by way of charity, to be remembered for when he was gone and that he wished Masonry to have a part in it. At a later date donor told Ussery that there were no strings attached to the $80,000 gift in that the trustees had *336 final discretion in selecting the particular charitable objects of the gift. Donor also told C. E. Blakey, a trustee who was first elected in 1946, that the $80,000 gift was to be used to relieve the suffering of mankind. On July 28, 1947, donor was in the Moody Hospital in Dothan with what proved to be his last illness. He requested J. S. Talley, who was then visiting him, to secure the presence of Ussery. When Ussery arrived donor turned over to him, in front of Talley who acted as witness, six cashiers checks made out to donor, totaling $20,900. Donor said the money was to be kept with the $80,000 previously given. The checks were deposited to the account of the Association in the Dothan Bank and Trust Company on August 21, 1947. The donor mentioned to the trustees at various times that he wanted his gifts used for charitable purposes after his death, but that he wished no talk about, or praise for, those gifts while he was alive. One day, following the making of the above gifts, Ussery visited the donor in the Moody Hospital. Donor at that time made the following statement embodying his intent in making gifts to the Association which Ussery, for his own remembrance and guidance, *337 dictated to his secretary as soon as he returned to his office: "Now, I come toward the end of the road, and I realize that my life has been a failure, because I have made my main objective the making of money. None of my family care a thing in the world about me, (my wife is the cause of that,) except for what they can get out of me. The real friends that I have are my Masonic friends, except a very few other social friends, and I am counting on you Masons, and particularly the Masonic Corporation, of which you are the chairman, to make good my failure to do the things I should have done while I was living. "I have given the corporation some money and more will be added to it, and I want you to see that it is spent wisely and to do good with it, to relieve suffering and to compensate for my failure during my lifetime. Make it last a long time for my failures are many." On or about December 18, 1947, donor, after being transferred to a hospital in Birmingham, Alabama, executed a deed conveying two properties to Irene Moody for life with remainder to the Association. At the date of the gift the fair market value of the life estates totaled $9,280 and the fair market value of the *338 remainders totaled $6,720. Donor then wished to make a statement to all the Dothan Masons regarding his gifts but his health prevented him from doing so in person. Consequently, pursuant to the donor's instructions, his attorney drafted a letter to the trustees of the Association which was dated January 9, 1948, and signed by donor. The letter, which is quoted below, was publicly read at a banquet of all the Dothan Masonic organizations: "Dothan, Alabama, January 9, 1948 "TO THE TRUSTEES OF DOTHAN MASONIC FRATERNAL & BENEVOLENT ASSOCIATION, Dothan, Alabama. "My dear Brethren: "Before this time I had planned to have you and many other Masons from all the Bodies in Dothan present with me to the end that I could put in writing and state to you in person what I am now writing to you. "Some forty-one years ago I was made a Master Mason. The fine principles and wonderful teachings of this Ancient Order and the Higher Bodies from the Entered Apprentice to the Knight Templer Masons have been a lamp to my feet through these years. A good many years ago into my mind and heart came the thought: is there anything I can do to help perpetuate the ideals, teachings and principles of these *339 great Orders? The answer came that a fund might be established out of my resources to alleviate human misery, disease, and to distribute some sums of charity to those who are in misery and have disease and are worthy objects of charity on account of circumstances beyond their control. "To this end some years ago I began to make contributions to Dothan Masonic Fraternal and Benevolent Association. This has been followed by the execution of my will by the terms of which I have left substantially all of my estate further to carry out this purpose. "I ask you as trustees, and your successors in office, that out of these funds no loans be made and no contributions be made to various drives made for charitable and eleemosynary purposes. I want the funds used primarily for the benefit of Masons and their dependents and descendants, but same not to be confined to them. The purpose of the fund is to include all classes and not to include those who may be the objects of the bounty of churches, other societies, institutions, organizations and political subdivisions. It is asked that you as such trustees select the objects on whom this fund is to be bestowed and the suggestion is made that *340 you not depend on others to guide you in such selection and that you not be guided by petitions and requests from other people, organizations and bodies. My idea and wish is that the funds be used to alleviate human misery, to palliate and cure human disease and to meet overwhelming emergencies in the lives of the persons referred to and chosen by you. Particularly, do I want you to help persons who are temporarily in distress and peril and suffering - such persons to be selected by you and your successors in office, and I want that you and your successors in office be the sole judges of such persons and their needs, always keeping in mind these words of the Master: 'Inasmuch as ye have done it unto one of the least of these my brethren, ye have done it unto me.' "I make bold to make this request and to give this injunction to you and your successors in office and to the various Masonic Bodies in the City of Dothan who are empowered to elect your successors in office: "Choose as Trustee of Dothan Masonic Fraternal and Benevolent Association men of good and tried business ability, who are capable of making wise investments and of handling large sums of money and large affairs and *341 yet men who will be sympathetic toward the general plan of this fund as set out herein. "I suggest that the Trustees and their successors in office, at their discretion, invest such part of the funds before this time given and also given and devised in my last will and testament as will lead to the perpetuation of this fund and trust. I hope that you and your successors in office can hold intact that part of my property which is valuable and productive, but yet not so handle the same as to impede progress and, of course if necessary, you will invest and reinvest the funds and property already mentioned in this letter. "I desire and hope and trust that you and your successors in office will so stimulate interest in this trust and these funds that others from time to time will add to the same. I urge that this request be given earnest heed. "I ask that you transmit a copy of this letter to the four Bodies of the Order who are empowered to elect Trustees of Dothan Masonic Fraternal and Benevolent Association. "Yours fraternally, "(Signed) Charles Dorsey Murphy." The aforementioned letter contained in substance what donor had told the trustees at various times during the period *342 in issue and the letter was accepted and approved by the trustees. In fact, the trustees had always understood that the gifts were only to be used to relieve the suffering of mankind and for other charitable purposes and, at a meeting held sometime prior to the writing of the letter, had agreed to use them only for those purposes. They had also, prior to the writing of the letter, decided upon the procedure to be followed in handling the gifts and making grants therefrom. The funds received from donor were always kept separate from other funds and property of the Association and, after donor's death the Charles D. Murphy Masonic Foundation was established with those funds and property interests. Only two grants have been made from the donor's gifts. Shortly prior to his death donor requested the trustees to make some use of the fund so that he would have an opportunity to observe how they exercised their discretion. The trustees thereupon paid some of the medical expenses of a tenant farm boy who was born with a cleft palate. Following donor's death the trustees received word from donor's sister that his 90-year old mother, who lived in Kentucky, was in dire need. After verifying *343 that report and consulting their attorney to determine the propriety of their proposed action, the trustees gave donor's mother $200 to cover medical and other expenses. Further use of the fund following donor's death was, it appears, prevented by litigation in which donor's successors challenged the validity of the gifts to the Association. In addition to the aforementioned gifts, donor, in 1947, made two conveyances of future interests in real estate to E. B. McDaniel, Jr., in trust for certain persons. The then fair market value of those gifts totaled $15,000. Opinion BLACK, Judge: In 1945, donor gave an $80,000 cash gift to the Association. In 1947, he gave the Association a $20,900 cash gift and remainder interests in realty with a then aggregate fair market value of $6,720. The question for decision is whether those gifts qualify for exemption from gift taxation, under any of the provisions of Internal Revenue Code section 1004 (a) (2), as gifts made for charitable or like purposes. In determining that question reference to cases decided under the similar charitable contribution provisions of the income and estate tax portions of the Code [1] is apt *344 since section 1004 (a) (2) was patterned after those provisions. H. R. Rep. No. 708, 72d Cong., 1st Sess., p. 30 (1939-1 CB, Part 2, p. 478); Sen. Rep. No. 665, 72d Cong., 1st Sess., p. 41 (1931-1 CB, Part 2, p. 526). Section 1004 (a) (2) (B) of the Code provides in part that gifts to a trust organized and operated exclusively for charitable purposes, no part of the net earnings of which inures to the benefit of any private individual and no substantial part of the activity of which is attempting to influence legislation, are exempt from gift taxation. [2] It is our opinion that the gifts here in issue qualify for exemption under that section. *345 Donor, in 1945, first made the Association the beneficiary of three of his life insurance policies, stating that the proceeds were to be used for charitable purposes and that the Association, rather than his own lodge, was made the beneficiary because of the superior qualifications of its trustees. Later in that year donor turned over $80,000 in cash to the Association, requiring that withdrawals of that sum be made only upon signature of the four Association trustees or their duly elected successors. His instruction regarding the cash gift of $20,900 in 1947 was to the effect that it was to be handled along with the $80,000. At various times the donor stated orally to the trustees that the gifts of cash and of the remainder interests in realty (also given in 1947) were to be used to relieve human suffering and for other charitable purposes. Moreover, the trustees understood and accepted the gifts as being for those purposes. In fact they held a meeting at which the whole matter was discussed and at which they established a procedure for administering the trust fund and making grants therefrom. Finally, following his gift of the realty interests and just before his death, donor sent *346 a signed letter dated January 9, 1948, to the trustees setting forth, in substance, the terms of the trust. The letter was read at a banquet of the Dothan Masonic organization and was accepted and approved by the trustees. Its particularly pertinent provisions follow: "* * * A good many years ago into my mind and heart came the thought: is there anything I can do tp help perpetuate the ideals, teachings and principles of these great [Masonic] Orders? The answer came that a fund might be established out of my resources to alleviate human misery, disease, and to distribute some sums of charity to those who are in misery and have disease and are worthy objects of charity on account of circumstances beyond their control. "To this end some years ago I began to make contributions to Dothan Masonic Fraternal and Benevolent Association. "* * * I want the funds used primarily for the benefit of Masons and their dependents and descendants, but same not to be confined to them. * * * My idea and wish is that the funds be used to alleviate human misery, to palliate and cure human disease and to meet overwhelming emergencies in the lives of the persons referred to and chosen by you. Particularly, *347 do I want you to help persons who are temporarily in distress and peril and suffering - such persons to be selected by you and your successors in office, and I want that you and your successors in office be the sole judges of such persons and their needs, always keeping in mind these words of the Master: 'Inasmuch as ye have done it unto one of the least of these my brethren, ye have done it unto me.'" After donor's death the trustees established the Charles D. Murphy Masonic Foundation with the gifts given by donor. It is clear to us that the gifts in issue were made in trust and that the trust was for charitable purposes. A fair consideration of the above facts is consistent with no other conclusion. A charitable trust is valid under the laws of Alabama (the jurisdiction in which the instant trust was established), Code of Alabama, 1940, Title 47, section 145, and an oral trust of personalty is valid both under Alabama law and for purposes of the federal taxing statutes. Moore v. Campbell, 113 Ala. 587, 21 So. 353; Pierce Estates, Inc., 3 T.C. 875. As regards the realty interests we believe that the evidence, especially donor's letter of January 9, 1948 to *348 the trustees and the trustees' acknowledgment of the trust, is sufficient to satisfy the Alabama statute of frauds applicable to trusts concerning lands. Code of Alabama, 1940, Title 47, section 149; Howison v. Baird, 145 Ala. 683, 40 So. 94; Wiggs v. Winn, 127 Ala. 621, 29 So. 96. Finally, since the donor neither orally nor in the January 9, 1948 letter reserved power to revoke the trust, it is irrevocable as is required under the gift tax provisions of the Code. See First National Bank of Boston, Administrator, 25 B.T.A. 252. We need not concern ourselves with whether the trust was already organized and in operation at the time donor made his gifts, nor with the fact that no more than one grant was made by the trust during donor's life. Deductibility of the gifts in issue is not effected by those factors. E.T. 15, 1940-1 C.B. 234; Bok v. McCaughn, (C.A. 3) 42 Fed. (2d) 616; Eppa Hunton, IV, 1 T.C. 821; Proctor Patterson et al., Executors, 34 B.T.A. 689. Nor is it of importance that the one grant during donor's lifetime was made in response to donor's request that the trustees demonstrate *349 for him the manner in which they would exercise their discretion to choose beneficiaries. Proctor Patterson et al., Executors, supra.We also note that the $200 grant to donor's 90-yearold mother following his death does not, in view of all the facts, indicate that the trust was established for other than exclusively charitable purposes. The grant was made only after a correct determination by the trustees that donor's mother was in fact indigent and in reliance upon their attorney's opinion that such grant would not be inimical to the trust. A trust which otherwise meets the requirements of a charitable trust under the revenue laws may not be attacked solely because some of its funds are distributed to a relative of the donor, if that relative is a legitimate member of the class of beneficiaries for which the trust was established. Schoellkopf v. United States (C.A. 2), 124 Fed. (2d) 982. Respondent argues that the gifts in question are not exempt from gift taxes because the Association itself does not fall within the class of donees, specified in section 1004 (a) (2) of the Code, to whom gifts are exempt. Even if this argument is conceded it is not in *350 point since the gifts were made to the Association, not outright for its own use, but rather in trust for certain charitable purposes. It seems clear to us from the evidence that the gifts in this case were gifts in trust. If the gifts had been made to the Association for its own use, rather than the trust, it would be necessary to consider whether the Association itself was organized and operated exclusively for religious, charitable, scientific or educational purposes. The gifts, however, were not outright gifts to the Association; the gifts were made to the Association as trustee. The testimony is that the funds were held as trust funds separate and apart from the other funds of the Association. The record in this case demonstrates, we think, that each and every gift was made by the decedent to the Association in trust exclusively for the relief of the suffering of the poor and needy. The evidence convinces us that the donor manifested his intention as to the purpose of the trust at the time each gift was made, that the gifts were understood by the trustees of the Association to be in trust for such charitable purpose and were so accepted by them on behalf of the Association, *351 and that the funds were held and used by the Association in trust exclusively for such charitable purpose. Gifts in trust for charitable purposes are deductible under section 1004 of the Code irrespective of whether or not the trustee is a charitable organization. The trustee may be a bank, trust company, or individual, none of which is specified in section 1004. The gift will nevertheless be deductible under that section if made in trust for charitable purposes. For these reasons we hold for petitioners on this issue. Respondent made the following additional adjustments in donor's return for 1947: (1) determined that the value of life estates given Irene Moody in two parcels of real estate totaled $9,280, rather than $8,000 as reported by donor, and (2) disallowed the $3,000 exclusion claimed under section 1003 (b) (3) of the Code for gifts to E. B. McDaniel, Jr., Trustee, since those gifts were of future interests. These adjustments are not contested by petitioners and we hold that they are correctly determined. Finally, respondent asserted a penalty of 25 per cent of donor's 1945 gift tax for donor's failure without reasonable cause to timely file a return for that year. I.R.C., sections 1018 *352 , 3612 (d) (1). The effect of our decision on the main issue is that the donor was not required to pay any gift tax for 1945. Consequently, no such penalty can be assessed. Decisions will be entered under Rule 50. Footnotes
*. The following proceedings are consolidated herewith: Estate of Charles D. Murphy (deceased) donor, Irene Moody, transferee; Estate of Charles D. Murphy (deceased) donor, Dothan Masonic Fraternal and Benevolent Association, Transferee; and Estate of Charles D. Murphy (deceased) donor, E. B. McDaniel, Jr., trustee and transferee.↩
1. I.R.C., sections 23(o), 812(d)↩.
2. SEC. 1004. DEDUCTIONS. * * *
In computing net gifts for the calendar year 1943 and subsequent calendar years, there shall be allowed as deductions: (a) Residents. - In the case of a citizen or resident - * * *
(2) Charitable. Etc., Gifts. - The amount of all gifts made during such year to or for the use of - * * *
(B) a corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals: no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. * * *↩