## HEFFELFINGER v. COMMISSIONER OF INTERNAL REVENUE.
### No. 10637.

Circuit Court of Appeals, Eighth Circuit.
Feb. 15, 1937.

James B. Templeton, of Minneapolis, Minn. (Carl O. Reinholdson, of Minneapolis, Minn., on the brief), for petitioner.

Louise Foster, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Francis I. Howley, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This is a proceeding to review a decision of the Board of Tax Appeals. By its orders of redetermination it found against the petitioner deficiencies in income taxes for the calendar years 1924 to 1931, inclusive. On or about December 30, 1922, petitioner, a resident of Minneapolis, Minn., took out a ten-year endowment life insurance policy with a face value of $100,-000. On the same date he created an irrevocable trust, in which he named the Minnesota Loan & Trust Company as trustee, and to which he transferred 1,700 shares of the preferred capital stock of the Heffelfinger Securities Company, having a par value of $170,000. The petitioner's daughter was named as the beneficiary in the trust and in the said policy of insurance. The income from the trust was to be used to pay the annual premiums upon this endowment policy, and any income in excess of such premiums and expenses of administration was to be accumulated and added to the corpus. The petitioner reserved to himself no rights under the trust or policy. In making return of his net income for the years in question, petitioner did not include the part of the income of the trust for each year applicable to the payment of the premium for that year upon the said policy of insurance. The Commissioner, in computing the deficiencies for 1924, 1925, 1926, 1927, and 1931, included in the petitioner's income the premiums paid on the insurance policy. For the years 1928, 1929, and 1930, he included the net income of the trust in the petitioner's income for those years. The Board of Tax Appeals sustained the action of the Commissioner as to the years 1924, 1925, 1926, 1927, and 1931, but as to 1928, 1929, and 1930, limited the income for those years to that part of the trust income applicable to the payment of premiums on the policy. Section 219 (h) of the Revenue Act of 1924, c. 234, 43 Stat. 253, 277, provides, as far as here applicable, that "where any part of the income of a trust is or may be applied to the payment of premiums upon policies of insurance on the life of the grantor, * * * such part of the income of the trust shall be included in computing the net income of the grantor." The same language was contained in the Revenue Act of 1926, § 219(h), c. 27, 44 Stat. 9, 34, and in section 167 of the Rev-

enue Act of 1928, c. 852, 45 Stat. 791, 840 (26 U.S.C.A. § 167 note). These are the statutes under which the Commissioner and the Board of Tax Appeals acted.

█ The questions presented on this review are thus properly stated in respondent's brief:

"1. Whether an endowment policy is contemplated within the provisions of the Revenue Acts which tax the grantor of a trust to the extent of that part of the income of the trust applied to premiums upon an insurance policy on his life.

"2. Whether such application of the statute would render it unconstitutional."

Under the first question petitioner challenges the application of the statutes above cited upon the ground that an endowment policy is not a life insurance policy within the meaning of those acts. But it can scarcely be denied that it is a policy of insurance upon the life of the grantor, and, therefore, strictly within the language of the statutes, which make no distinction between endowment policies and ordinary straight life policies. The great weight of authority places endowment policies and ordinary life policies within the same classification.

"The term 'life insurance' is not alone applicable to an insurance for the full term of one's life." Briggs v. McCullough, 36 Cal. 542. In that case it was held that an endowment policy is an insurance on the life in the sense of a statute exempting life insurance policies from execution. To these citations may be added: Endowment & Benevolent Ass'n v. State, 35 Kan. 253, 10 P. 872; Carr v. Hamilton, 129 U.S. 252, 9 S.Ct. 295, 32 L.Ed. 669; Cooley's Briefs on Insurance, (2d Ed.) Vol. I, p. 19, and State v. Federal Investment Co., 48 Minn. 110, 50 N.W. 1028. In the last-named case, endowment insurance is called another form of ordinary life insurance, and the court said: "In either of these forms the contract is, strictly speaking, an insurance on the life of the party, although the latter is generally denominated 'endowment' insurance." And in Cooley's Briefs on Insurance, vol. 1, p. 773, we find the following: "Some policies have received designations descriptive of some particular or peculiar feature differentiating them from other policies of the same general class. * * * A life policy may be described as a participating policy, or as an endowment policy."

Our conclusion is that this endowment policy falls within the terms of the statutes cited, applicable to "the payment of premiums upon policies of insurance on the life of the grantor." Those terms are broad and all-inclusive and make no distinction between endowment policies and other forms of life policies, nor between that part of the premium which equals the cost of protection upon the life of the grantor and the excess over that amount which may represent the investment feature of the policy. The Board, in its redetermination, carefully limited the income taxed to that part of the trust income applicable to the payment of premiums, and not to what may be termed the endowment features of the policy. The period from which those features of the policy were to commence had not expired during the taxable years in question. A commitment to pay endowment premiums is not different from one to pay ordinary life premiums. Both are paid upon policies of insurance upon the life of the insured. Neither is strictly a legal obligation.

█ The case of Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439, is decisive of both questions presented. The intention of Congress, as evidenced by the broad and unambiguous language employed, is the controlling consideration. As held in the Wells Case: "Refinements of title are without controlling force in determining whether a statute arbitrarily attributes to one person a taxable interest in the income of another. The question is not whether the concept of ownership reflected in the statute squares with common-law traditions, but rather whether that concept could reasonably be adopted because of privilege enjoyed or benefit derived by the taxpayer, some regard being had also to administrative convenience and the practical necessities of an efficient taxing system."

As to the purpose of the legislation the court quotes from the Report of the Ways and Means Committee of the House, as follows: "Trusts have been used to evade taxes by means of provisions allowing the distribution of the income to the grantor or its use for his benefit. The purpose of this subdivision of the bill is to stop this evasion." And says: "One can read in the revisions of the Revenue Acts the record of the government's endeavor to keep pace with the fertility of invention

whereby taxpayers had contrived to keep the larger benefits of ownership and be relieved of the attendant burdens."

It is pointed out that one who takes out a policy on his own life, after application accepted by the company, becomes thereby a party to a contract, although the benefits are to accrue to another. Such contracts remain his, at least in part, and may be maintained, by suit, if necessary, for the protection of dependents in whose favor they are made. The Supreme Court, therefore, reaches this conclusion: "Income permanently applied by the act of the taxpayer to the maintenance of contracts of insurance made in his name for the support of his dependents is income used for his benefit in such a sense and to such a degree that there is nothing arbitrary or tyrannical in taxing it as his." Burnet v. Wells, supra, 289 U.S. 670, loc. cit. 680, 681, 53 S.Ct. 761, 765, 77 L.Ed. 1439.

The doctrine announced in the Wells Case finds continued confirmation and approval in Douglas v. Willcuts, 296 U.S. 1, 9, 10, 56 S.Ct. 59, 62, 63, 80 L.Ed. 3, 101 A. L.R. 391.

It results that the orders of the Board of Tax Appeals should be sustained and affirmed. It is so ordered.