**RAND v. HELVERING, Commissioner of Internal Revenue.**

No. 11701.

Circuit Court of Appeals, Eighth Circuit.

Jan. 13, 1941.

Daniel N. Kirby, of St. Louis, Mo. (R. E. Blake, R. O. Rumer, and Harry W. Kroeger, all of St. Louis, Mo., on the brief), for petitioner.

Harry Marselli, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

This is a proceeding to review a decision of the Board of Tax Appeals which found a deficiency in the income of petitioner for the years 1934 and 1935. The Board held that the income of certain separate trusts created by the petitioner for the benefit of his children was, to the extent that it had been applied to the payment of premiums on life insurance, taxable income. The Board also held that the petitioner was not entitled to deduct from his taxable income a loss upon stock alleged to have become worthless during the taxable period. The facts are not in dispute and as found by the Board are substantially as follows:

Petitioner lives in University City, Missouri, and for over forty years has been associated with the International Shoe Company in various positions. In 1916, he was elected president of that company, which position he held until 1930, when he was made chairman of the board. Since 1920, his family has consisted of his wife and six children. Impressed with the fact that upon the death intestate of petitioner's predecessor as president of the company, his son upon attaining his majority would come into a substantial fortune, and being desirous of avoiding a situation of that kind, petitioner determined to form trusts for his own children, none of whom owned any property and who at that time were all minors. On various dates between 1920 and 1926, petitioner caused securities to be issued to "Frank C. Rand, natural guardian for," naming the child, the name being followed by the words, "a minor donee."

His intent in constituting himself natural guardian was to convert the guardianships into trusts for the children when he could determine upon the permanent form of such trusts. As natural guardian, he collected the income of the guardianship estates, and kept it separate and apart from any of his or his wife's personal income. He did not use any of the income from the guardianship estates for his own benefit, nor for the support or education of his children during whose minority he furnished all maintenance. On September 26, 1926, his oldest child was to become of age, and on September 15, 1926, he executed a declaration of trust by which he caused to be transferred to himself as trustee the guardianship estate which he had previously held for that child. Similar trusts were created for the other children in October, 1926. All of the trusts, save one, were by their terms irrevocable, and in the one not specifically made irrevocable, there was no provision making it revocable.

The provisions of the trust, so far as here pertinent, were common to all of them. The property was transferred to Frank C. Rand as trustee, "to hold, manage, and improve said property, with full authority to such trustee to change the investment of the same or any part thereof and to invest or reinvest the proceeds from time to time, with full power to accumulate, invest, change or reinvest the surplus of any income, dividends and interest from said securities and property, nevertheless for the benefit" of the respective children. At stated times portions of the trust principal were to be turned over to the designated beneficiary and the respective trusts were to terminate on the final distribution of the trust estate. Each trust instrument provided: "1. The trustee shall have the following powers in addition to those hereinbefore conferred or those ordinarily possessed by trustees: * * *. 2. The power to purchase securities at a premium and to charge the premium against principal or against income or partly against income as in the opinion of the trustee may be suitable and appropriate. 3. The power to purchase for cash or on credit securities or other property, and to borrow money from time to time upon such terms as the said trustee may think expedient, upon the security of any of the property of this trust, whether real or personal, and for such purposes to give and execute and acknowledge mortgages, with such powers and provisions as said trustee may think proper, and

also to execute and deliver such notes or bonds as it is necessary to use in connection with such transactions. * * *"

Petitioner has kept individual book accounts for each of the six beneficiaries of all the transactions of the trusts and has kept the trust funds deposited in a bank account known as the "Rand-Six Trusts," and the trustee's books show the separate individual interest of each trust beneficiary.

Prior to 1934, none of the income or principal of the trust estates had been used for the purchase of life insurance. In 1934, and for several years prior thereto, there had been accumulations of the trust income and petitioner found it difficult to determine what investments he could advantageously make at that time due to the uncertainty of general market conditions. Substantially the same situation obtained in 1935. In view of this situation, he thought a good, safe investment could be made in a substantial amount of life insurance taken out by him as trustee for the benefit of the several trusts. Accordingly, forty-five separate life insurance policies on the life of petitioner were taken out in 1934 by petitioner as trustee of the respective trusts for his children. The total protection provided for aggregates $1,000,000. The proceeds of all of the policies are payable to Frank C. Rand, or his successor in trust, as trustee for his respective children. In instances when the right to change beneficiary exists, it is exercisable by the trustee.

Petitioner, as trustee, out of the income of the trusts applied $63,927.53 to the payment of premiums upon the policies of life insurance during 1934, and during 1935 paid $61,606.70 in premiums on the same policies. Since 1935, the six children have paid the premiums on the insurance policies out of their own separate property. The total income of all the trust estates for 1934 and 1935 was $322,277.91 and $359,138.20, respectively.

In 1931, the Reorganization Investment Company was organized to take over the obligations and liquidate the partnership of Lorenzo E. Anderson & Company, which had been conducting a stock and bond brokerage business in St. Louis, Missouri. Petitioner and members of his family were creditors of the company to the extent of approximately $665,000. At the time of the organization of the Investment Company, petitioner subscribed $847,166.67, for which he received 847⅙₆ certificates of beneficial interest in the stock of the company. In 1933, he sold an interest in 500 shares, which had cost him $500,000, for the net sum of $4. He claimed and was allowed a deduction for this loss in his income tax return for that year. On December 27, 1934, he sold his interest in 12 shares for 10 cents per share, realizing therefrom, after deducting commission, 22 cents. He had paid $1,000 per share for this stock in 1931. The balance sheet of the Reorganization Investment Company as of December 31, 1933, showed assets of $1,769,088.83, and liabilities of like amount. The Board found that the stock of the Reorganization Investment Company had become and was worthless prior to 1934, and hence, there could be no deduction for the loss in that investment for 1934.

Petitioner here contends, as he did before the Board of Tax Appeals: (1) that since the trust instruments give no power to the trustee to invest the income or principal of the trust in life insurance on the life of the grantor, the inclusion of such sum as was so invested, in income of the petitioner who was the grantor, was erroneous; (2) that the stock in the Reorganization Investment Company was not worthless prior to 1934, and hence, he should have been permitted a deduction for its loss for that year.

The applicable statute is Section 167 (a) (3) of the Revenue Act of 1934, 26 U.S. C.A. Int.Rev.Code, § 167(a) (3), which, so far as here pertinent, reads as follows:

"§ 167. Income for benefit of grantor

"(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

"(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor * *; then such part of the income of the trust shall be included in computing the net income of the grantor. * * *"

Here, the income from these trusts for the years 1934 and 1935 was in fact applied to the payment of premiums upon policies of insurance on the life of the grantor of the trusts, and hence, under the provisions of this statute, would seem to be taxable. Heffelfinger v. Commissioner of Internal Revenue, 8 Cir., 87 F.2d 991, 109 A.L.R. 1045; Pillsbury v. Burnet, 62 App. D.C. 289, 67 F.2d 151. It is, however, contended by petitioner that the use of the income of the trust estates for the payment of life insurance premiums was not authorized by the trust instruments.

■ Petitioner was the grantor in each of these trusts. He was also the trustee named in each, and the beneficiaries were his children. The property which he as an individual conveyed to himself as trustee was his individual property at the time of the execution of the trust, and he continued to hold, manage, invest or reinvest the proceeds arising therefrom with practically no limitations upon his power and authority in so doing. Accepting petitioner's version of the transaction involved, and accepting for the moment his contention with reference to the construction of the trust instruments, it would seem that the grantor and the trustee mutually agreed to the use of the income from the trusts to pay the insurance premiums and the beneficiaries either consented to the use of such income for such purpose or ratified and approved such use. If the action of the trustee in so using the funds was precluded by the written declaration, then apparently all of the interested parties waived such inhibition or abandoned it and consented to a change or modification of its terms. Ordinarily, a contract, whether written or oral, in the absence of statute changing the rule, may be changed, modified or waived in whole or in part by a subsequent contract or agreement, express or implied, oral or written. But as the Board did not base its decision upon this ground, we pursue the thought no further.

■■ Nothing in the statutes or decisions of Missouri directly prohibits investment of trust funds in life insurance policies, nor is there any affirmative expression in the trust instrument prohibiting such investment. Generally, the construction to be given a trust instrument is dependent upon the grantor's intention, and in case of doubt or ambiguity extraneous evidence may be considered. In the instant case, the trustee was thoroughly conversant

with the intention of the grantor. Can it be said that Rand, trustee, violated the trust imposed in him by Rand, grantor? To assume that he did so, would attribute to him a wrongful act. If the act were wrongful and constituted a breach of duty or a violation of law, no right could be predicated upon such wrong or breach of duty. As said in Board v. Commissioner of Internal Revenue, 6 Cir., 51 F.2d 73, 76: "* * * it is at least unusual that a taxpayer should be heard to assert the possibility of an adjudication of alleged misconduct and breach of trust, as relieving him from tax liability which is predicated upon the assumption of the honesty and legality of his acts."

■ We are bound to assume that Rand, trustee, did not intend to violate the trust vested in him by Rand, grantor, nor to do any act contrary to the intention expressed by the grantor. Noel v. Parrott, 4 Cir., 15 F.2d 669. We repeat, Rand, trustee, was thoroughly conversant with the intention of Rand, grantor, and he could not have violated that intention without committing a wrongful act. We should not assume that he intended a violation of his trust, and he ought not to be permitted to assert, as the basis for a right, that he violated it.

■■ It is urged that the purchase of insurance was not directly authorized by the trust instruments. The powers conferred, construed in the light of the acts of the parties and the surrounding circumstances, are, we think, broad enough to cover the acts in question. The purchase of the insurance was an investment of the kind which a prudent man in the community might well have made under the circumstances. From the sweeping powers granted, there was, under the proven circumstances, implied authority in the trustee to apply the income to the payment of life insurance premiums. The beneficiaries, as already observed, either approved or ratified the acts of the trustee. The insurance was taken out for the benefit of the children, and the petitioner as an individual had an interest in the policies. Burnet, Com'r v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439. The trustee was empowered to purchase securities "or other property." The Commissioner and the Board of Tax Appeals have determined from the action of the parties and the attending circumstances, that the term "other property" as used, was intended to have and had been given a broad construction.

All of the petitioner's acts supported the inference that he intended the income from these trusts to be available for the purpose of insurance if he, in his discretion, chose so to apply it. In his testimony he admitted that he did not know whether "that kind of investment was a permissible investment for the funds of private trusts." Accepting his transactions as having been taken in good faith, the conclusion of the Board was clearly warranted. As said by Mr. Justice Douglas in Helvering, Com'r v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 556, 84 L.Ed. 788: "Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue. * * * In the absence of more precise standards or guides supplied by statute or appropriate regulations, the answer to that question must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation. And where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary * * *."

What is said by Mr. Justice Stone in Helvering v. Horst, 61 S.Ct. 144, 147, 85 L.Ed. —— (opinion filed November 25, 1940) is significant of the trend of modern decision. It is there, among other things, said: "Although the donor here, by the transfer of the coupons, has precluded any possibility of his collecting them himself he has nevertheless, by his act, procured payment of the interest, as a valuable gift to a member of his family. Such a use of his economic gain, the right to receive income, to procure a satisfaction which can be obtained only by the expenditure of money or property, would seem to be the enjoyment of the income whether the satisfaction is the purchase of goods at the corner grocery, the payment of his debt there, or such non-material satisfactions as may result from the payment of a campaign or community chest contribution, or a gift to his favorite son. Even though he never receives the money he derives money's worth from the disposition of the coupons which he has used as money or money's worth in the procuring of a satisfaction which is procurable only by the expenditure of money or money's worth. The enjoyment of the economic benefit accruing to him by virtue of his acquisition of the coupons is realized as completely as it would have been if he had collected the interest in dollars and expended them for any of the purposes named. Burnet v. Wells, supra."

The income from the trusts which was devoted to the payment of premiums on insurance policies on the life of the grantor was properly included in petitioner's income.

■ There remains for consideration the claim of petitioner that he was entitled to charge off the loss in 1934 on the sale of stock in the Reorganization Investment Company. While there was some evidence that the stock in that company may have had some value, the fact remains that the petitioner in 1933 sold 500 shares of this same stock, which had cost him $500,000, for $4, and was allowed an appropriate deduction from his 1933 income on the basis that the stock was valueless in that year. The stock was given a nominal value of only $1 in the company's capital stock return for 1933. The corporation took over the assets and liabilities of an insolvent 'concern and itself sustained losses in the years 1931 to 1936. The stock was unlisted. When petitioner gave orders for the sale of the stock in 1934, he knew there was no market for it and he had sold similar shares for a nominal amount in 1933. He did not expect to sell for a substantial amount but wished only to make a sale to establish a loss for income tax purposes. Whether the stock had become worthless during the taxable period or prior thereto was a question of fact. Cass v. Helvering, 8 Cir., 83 F.2d 841; Brown v. Commissioner, 6 Cir., 94 F.2d 101. If the stock became worthless prior to the taxable year, then it could not be said that the loss was sustained during that year. Petitioner himself established that the stock became worthless prior to 1934 by selling in 1933, 500 shares at four-fifths of a cent a share. We can not say that the findings of the Board are not sustained by substantial evidence, and hence, is binding upon us. Helvering, Com'r v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343; Helvering v. Kehoe, 309 U.S. 277, 60 S.Ct. 549, 84 L.Ed. 751.

The decision of the Board of Tax Appeals is therefore affirmed.