GRANT B. SHIPLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29339. Promulgated October 31, 1951.

*Sidney B. Gambill, Esq.*, for the petitioner.
*Kalman A. Goldring, Esq.*, for the respondent.

---

[2] Revenue Act of 1921, corresponding to section 46, Internal Revenue Code.
17 T. C.

OPINION.

OPPER, *Judge:* The sale by petitioner of his stock in American Minerals Corporation for the nominal amount of $1 for 2,200 shares would not entitle him to a deductible loss in the instant year 1945 when the sale took place, if the stock had already become worthless in a prior year. *Frank C. Rand,* 40 B. T. A. 233, affd. (C. A. 8) 116 F. 2d 929, certiorari denied 313 U. S. 594; *Claude D. Cass,* 32 B. T. A. 713, affd. (C. A. 8) 83 F. 2d 841. From 1939, the date of its acquisition, until the year of sale, we have no evidence of the value of the stock to sustain petitioner's burden of proof. The books of the corporation which show the net assets to have been virtually unchanged during that period are of no probative value in the light, on the one hand, of the testimony that the stock was worth $25,000 in 1939, and, on the

other, that it was apparently worthless in 1945. *Frank C. Rand, supra;* cf. *B. F. Edwards*, 39 B. T. A. 735.

Even if we assume with petitioner that a worthlessness in 1943 or 1944 would entitle him on this record to a loss carry-over to some extent, there is no greater proof that the worthlessness occurred in either of those years than as to the instant year, on the one hand, or the years 1940, 1941, or 1942, on the other.

It necessarily follows that on this record, even if the stock had value in 1939, it could as well have become worthless in the period 1940 through 1942. If so, petitioner would be entitled to no deduction. His burden has accordingly not been met.

To the foregoing, the following may be added. *B. F. Edwards, supra,* stands for the proposition that ordinarily a corporation's books are some evidence of the value of its stock. This means that if the value of the stock is in controversy and if there is no other information whatever in the record, petitioner may have sustained his burden.

There are at least two ways by which the effect of such evidence may be overcome. One is for the record to contain independent evidence of the value of the corporation's property or of its stock from which their true value may be ascertained. Another is for the facts otherwise appearing to demonstrate that contrary to the usual circumstances, the corporate books do not bear any relation to the actual value of the stock. That was the situation in *Frank C. Rand, supra.* It is our view that the same situation obtains here.

Unlike the *Edwards* case,[1] the books of the corporation involved in this proceeding were virtually unchanged for the 7 years of which we have a record. The assets shown on the books varied from high to low by under $100, and that included the year in controversy. The net worth showed no significant change. It appears that no business operations were ever conducted. Accepting the books as evidence therefore would mean that the value of the stock was virtually unchanged during that time. Petitioner testified that the shares in question had a substantial value—$25,000—when he acquired them in 1939. If the evidence of the books is to be credited, they would have approximately the same value in 1945.

There is some indication that petitioner himself did not rely on the book figures, although he was the controlling stockholder, and

---

[1] In the *Edwards* case, as the facts state, the balance sheets differed substantially in the various years with marked alterations in assets and liabilities. As a result, the financial statements showed a surplus of $1,257,897 on December 31, 1931, a deficit of $759,110.76 on December 31, 1934, and a deficit of $1,217,354.83 on December 31, 1935. The capital was always carried at $2,600,000. Thus the balance sheets showed an increasing impairment of capital and a deteriorating financial situation. Consequently the fact that the stock was worthless in December 1935 did not indicate that the balance sheets of prior years had no probative value. On the contrary, since they portrayed a more favorable financial situation than the 1935 balance sheet, it was logical to conclude that the stock had a value greater than zero in the earlier years.

was indirectly responsible for the books, unlike the petitioner in the *Edwards* case. But in any event, when this petitioner sold the shares in 1945 for less than one-twentieth of a cent apiece, only three conclusions are possible. Either petitioner's valuation of the stock on receipt was erroneous, in which event, unlike the *Edwards* case, there is no proof of basis since he did not purchase the stock, *First National Bank, Philipsburg, Pa.*, 43 B. T. A. 456; or the stock was still worth approximately $25,000 in 1945, in which event for reasons not appearing in the record petitioner, voluntarily sold the stock for a minuscule fraction of its true worth, not in a bona fide sale; [2] or the books of the corporation bore no relation to the true value of the stock in which event there is, as previously stated, a complete failure of proof that the shares had any value in prior years. Whichever proposition is adopted, petitioner cannot succeed.

The only thing the books can be taken to show on this record is that the value of the stock was virtually unchanged from 1939 to 1945, the year of sale. This has been found as a fact, and is fatal to petitioner's case.

Reviewed by the Court.

*Decision will be entered for the respondent.*

BLACK, *J.*, concurs in the result.

———

KERN, *C. J.*, concurring: While the majority opinion points out several facts in the instant case which differ from those present in *B. F. Edwards*, 39 B. T. A. 735, I am not wholly satisfied that a valid distinction in principle may be made between this case and the *ratio decidendi* in the *Edwards* case, which is to the effect that the book value of corporate assets "is some evidence of their actual value sufficient to shift the burden of going forward to the respondent" upon the issue whether corporate stock sold by a stockholder for a nominal consideration in the taxable year was actually worthless in a prior year, and that the sale of the stock for a nominal consideration in the taxable year when the book values of the corporate assets would indicate a substantial value of the stock would not be a circumstance constituting a "different showing" such as to negative any probative effect which the corporate books would have upon the questions of true asset value or fair market value of the corporate stock. It is my opinion that we were in error when we held in effect in the

---

[2] "* * * A sale of stock at a nominal price may not of itself establish worthlessness or the existence of value. *Claude D. Cass, supra* [32 B. T. A. 713, affd. (C. A. 8) 83 F. 2d 841] ; *De Loss v. Commissioner*, 28 Fed. 2d 803. However, if bona fide, it must establish that the stock is worth no more than the sale price. *Rhodes v. Commissioner*, 100 Fed. 2d 966." *Frank C. Rand, supra*, 239.

*Edwards* case that the book values of corporate assets were evidence of actual values of such assets, and consequently of the corporate stock, sufficient to shift the burden of going forward in that case when the record also disclosed a bona fide sale of the corporate stock for a nominal consideration in the taxable year which would indicate that the book values, which would have pointed to a substantial value of the stock, were not in accord with economic realities. Therefore, even though I am in doubt as to the validity of the distinction between this case and the *Edwards* case, I concur in the result reached herein.