Robert S. Davis v. Commissioner.
Davis v. Commissioner
Docket No. 44614.
United States Tax Court
T.C. Memo 1955-251; 1955 Tax Ct. Memo LEXIS 97; 14 T.C.M. (CCH) 1003; T.C.M. (RIA) 55251; 6 Oil & Gas Rep. 545; August 31, 1955
*97 Petitioner paid $32,000 on July 6, 1944, for a partial assignment of an oil and gas lease dated January 1, 1940, and "for a period of five years, and so long thereafter as oil or gas is produced in paying quantities." The parties stipulated that petitioner sustained a deductible loss upon the termination of this lease which petitioner contends expired on January 1, 1945. Held, the stipulation is a conclusion of law and must be disregarded. Ohio Clover Leaf Dairy Co., 8 B.T.A. 1249, affd. 34 Fed. (2d) 1022, certiorari denied 280 U.S. 588. Held further, petitioner did not show that his interest in the lease did not become worthless prior to 1945, and, therefore, did not prove that he sustained a deductible loss in 1945. Walter E. Barton, Esq., Investment Building, Washington, D.C., for the petitioner. Robert E. Maiden, Jr., Esq., for the respondent. BRUCE *99 Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax of petitioner and an addition to tax, as follows: Sec. 291(a)
Year
Deficiency
Addition to Tax
1942
$267.03
1943
$57,322.90
1944
9,566.72
1945
56,909.78
Petitioner did not contest a number of the adjustments in respondent's determination. Of the three issues raised by the petition, two have been withdrawn by agreement of the parties. The only issue for decision is whether petitioner sustained a deductible loss in 1944 or 1945 on his investment in an oil and gas lease. Findings of Fact The stipulated facts are so found. Petitioner and his wife resided in Indiana and filed their separate income tax returns for the calendar years 1942, 1943, 1944, and 1945 with the collector of internal revenue for the district of Indiana. Petitioner kept his books and filed his returns on a cash basis. An oil and gas lease dated January 1, 1940, was entered into between the United States, as lessor, and C. W. Carder, Mary D. Black, and J. A. Batson, as lessees. The lease covered sections 21, 28, 29, and 30, T. 19 S., R. 33 E., N.M.P.M., Lee County, New *100 Mexico. Said lease provided that it was "for a period of five years, and so long thereafter as oil and gas is produced in paying quantities." By an instrument dated October 17, 1944, the above lessees assigned their interest in the lease to the extent that it covered sections 21 and 28 to A. W. Cherry and Barron Kidd, excepting and reserving, however, certain overriding oil and gas royalties therein. This assignment was filed with the Department of Interior on November 17, 1944. On December 27, 1944, the original lessees filed a preference right application for a new lease under section 1 of the Act of July 29, 1942 (56 Stat. 726), and on the same date Cherry and Kidd filed a preference right application for a new lease with respect to the land assigned to them. On August 29, 1946, the assignment of the original lease to Cherry and Kidd in so far as it related to sections 21 and 28 was approved, effective as of December 31, 1944. On the same date (August 29, 1946) a new lease was issued to the original lessees covering sections 29 and 30, and a new lease was issued to Cherry and Kidd covering sections 21 and 28 pursuant to the provisions of section 1 of the Act of July 29, 1942 (56 *101 Stat. 726). On July 6, 1944, petitioner paid Cherry and Kidd $32,000 for an assignment of an undivided one-half interest in the above-described lease in so far as it covered sections 21 and 28. The assignment, which was dated October 25, 1944, was never filed with the Secretary of Interior for approval, and petitioner did not join in either of the applications for a new lease or otherwise attempt to obtain a new lease. On October 25, 1944 Cherry and Kidd commenced drilling a well on section 21. The well was nonproductive and drilling was discontinued on December 19, 1944 at a depth of 3,600 feet. Plugging and abandonment operations were completed on January 6, 1945, and approved on November 7, 1945. As of July 17, 1946, no other well had been drilled on the land covered by the lease. Petitioner resided in the Central Standard Time Zone in 1944 and 1945 and the lands covered by the lease were in the Mountain Standard Time Zone. When it was midnight December 31, 1944, in the Mountain Standard Time Zone it was 1:00 a.m. January 1, 1945 in the Central Standard Time Zone. December 31, 1944 was a Sunday. Opinion Petitioner is contending that he sustained the loss of his investment *102 in an oil and gas lease in 1945 which is deductible under section 23(e)(2) of the Internal Revenue Code of 1939. [1] Respondent argues that the loss was sustained in 1944. The parties stipulated that petitioner paid $32,000 on July 6, 1944 for a partial assignment of an oil and gas lease and that "upon the termination of said lease * * * petitioner sustained a deductible loss of $32,000." Petitioner contends that it has been shown that the lease terminated on January 1 of his taxable year 1945. [2] He argues that because of the above quoted stipulation, he is not required to prove anything further in order to establish 1945 as the proper year for deducting the loss. *103 Respondent, while requesting a finding that the lease expired December 31, 1944, relies primarily upon the contention that the stipulation, "upon the termination of said lease * * * petitioner sustained a deductible loss of $32,000," is a conclusion of law and must be disregarded, citing Ohio Clover Leaf Dairy Co., 8 B.T.A. 1249, 9 B.T.A. 433, affd. (C.A. 6) 34 Fed. (2d) 1022, certiorari denied 280 U.S. 588, and that without the stipulation petitioner has not carried his burden of proving that the loss was sustained in 1945 even if the lease did terminate on January 1 of that year. In our opinion respondent's contention is sound. In the Ohio Clover Leaf Dairy Co. case, supra, the Board held a stipulation, almost identical with the stipulation in the instant case, to be a conclusion of law and ineffective. We find that case controlling. See also Estate of Sanford v. Commissioner, 308 U.S. 39, 51; Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 289; London-Butte Gold Mines Co. v. Commissioner, (C.A. 10) 116 Fed. (2d) 473; Commissioner v. Ehrhart, (C.A. 5) 82 Fed. (2d) 338; John A. Nelson Co. v. Commissioner, (C.A. 7) 75 Fed. (2d) 696, *104 reversed on other grounds 296 U.S. 374; McClintock-Trunkey Co., 19 T.C. 297, 304, revd. on other grounds (C.A. 9) 217 Fed. (2d) 326; Volunteer State Life Insurance Co., 35 B.T.A. 491, 496, revd. on other grounds (C.A. 7) 110 Fed. (2d) 879, certiorari denied 310 U.S. 636; First National Bank of Boston, 25 B.T.A. 252, 257; Victor G. Marquissee, 11 B.T.A. 334, affd. (C.A. 3) 47 Fed. (2d) 32. Petitioner can hardly complain that he was prejudiced due to reliance upon the stipulation as he was granted a rehearing which afforded him every opportunity to present additional evidence. Cf. Anderson v. Commissioner, (C.A. 2) 156 Fed. (2d) 591, affirming 5 T.C. 482. Without the stipulation we agree with respondent that petitioner has not sustained his burden of proof. A part of that burden requires petitioner to prove that he had something of value at the beginning of the year in which the loss is claimed by him to have occurred. James Petroleum Corporation, 24 T.C. (filed June 28, 1955); Grant B. Shipley, 17 T.C. 740; C. C. Harmon, 1 T.C. 40, 56, *105 revd. on another point 323 U.S. 44. At the beginning of 1945 petitioner's interest in the lease had at most one day to run. There was no possible chance to drill a new well within that one day, and the only well drilled had proved nonproductive. If any value remained in petitioner's interest, it lay in a statutory preference right to a new lease. [3] But petitioner concedes that he did not have a right to a preference lease as he had not filed his assignment and, hence, was not a record title holder. Nor did he join in either of the preference right applications for a new lease filed by the original lessees or by his assignors, or otherwise attempt to obtain a new lease. Also, it was not demonstrated that the preference right as such would have had any value at the beginning of 1945. Therefore, as petitioner has failed to show that his investment had any value at the beginning of 1945, he has not proven that he sustained a deductible loss in that year. James Petroleum Corporation, supra. *106 Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * *
(2) If incurred in any transaction entered into for profit, though not connected with the trade or business; * * *↩
2. Petitioner relies upon the one hour time differential between New Mexico, the situs of the lands covered by the lease, and Indiana, petitioner's place of residence and where he filed his income tax returns, in order to establish that the lease was in existence at least one hour during petitioner's taxable year 1945 even assuming that the lease terminated at midnight December 31, 1944. In the alternative petitioner contends, among other things, that in computing the term of the lease the first day should be excluded; and, therefore, the lease terminated at midnight January 1, 1945.↩
3. Section 1 of the Act of July 29, 1942 (Chap. 534, 56 Stat 726) provides: That upon the expiration of the five-year term of any noncompetitive oil and gas lease issued pursuant to the provisions of the Act of August 21, 1935 (49 Stat. 674), amending the Act of February 25, 1920, and maintained in accordance with the applicable statutory requirements and regulations, the record title holder shall be entitled to a preference right over others to a new lease for the same land pursuant to the provisions of section 17 of the Act of February 25, 1920, as amended, and under such rules and regulations as are then in force, if he shall file an application therefor within ninety days prior to the date of the expiration of the lease. * * *↩