LAWRENCE DEMANN AND GLORIA DEMANN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Demann v. Commissioner
Docket No. 33150-87
United States Tax Court
T.C. Memo 1993-206; 1993 Tax Ct. Memo LEXIS 218; 65 T.C.M. (CCH) 2614; May 17, 1993, Filed *218 For petitioners: Wallace Musoff. For respondent: Jill A. Frisch. WELLS
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiency
1979
$  78,994
1980
103,570
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues we are asked to decide are: (1) Whether petitioners are entitled to a theft loss deduction for a certain licensing fee paid by petitioner Lawrence DeMann and related expenses; and (2) whether petitioners are entitled to deductions under section 1244 for losses on certain stocks. FINDINGS OF FACT Some of the facts and certain documents have been stipulated for trial pursuant to Rule 91. We incorporate the stipulated facts herein by reference. At the time petitioners filed their petition, they resided in New York, New York. United Laboratories of America, Inc.
Petitioner Lawrence DeMann (hereinafter individually referred to as petitioner) was introduced to the principals of *219 United Laboratories of America, Inc. (United Laboratories), which had allegedly developed a process to implant synthetic hair and was allegedly engaged in franchising the process. Petitioner investigated United Laboratories by visiting its office in Ohio, talking with some of its patients being treated there, and watching the process. After his investigation, on September 9, 1977, petitioner entered a franchise agreement with United Laboratories and paid a franchise fee in the amount of $ 50,000 to United Laboratories. The franchise agreement states that the franchisor, United Laboratories, is the owner of all right, title, and interest in the process of implanting synthetic hair. The agreement provides that the franchisor will warrant that it currently has the proper instructions, techniques, and knowledge required to successfully restore hair through the process of implanting synthetic hair. The agreement delineated the franchise territory, training, continuing supervision by the franchisor, and fees. During 1977 and 1978, petitioner attempted to find a location to establish a laboratory, and in 1978 he forwarded a preliminary plan for a location to United Laboratories, which *220 had the right to approve any location selection. By the end of 1978, however, petitioner believed that United Laboratories had failed to fulfill the franchise agreement, and he instructed his attorney to request a refund of his franchise fee. During 1979, having failed to receive a refund of the franchise fee or any response to his request for a refund of the fee, petitioner went to the office of United Laboratories in Ohio. While at the office, petitioner observed a marshal posting a notice that the office was closed. During and after 1979, petitioner was unsuccessful in his attempt to contact the principals of United Laboratories. Petitioner received a statement, dated June 30, 1978, for $ 6,000 from attorney Steven Antler for professional services rendered in connection with United Laboratories which included, but was not limited to, "negotiation, preparation and finalization of all documentation". The record does not reflect how or when the statement was paid. During September 1979, petitioners retained the services of Kenneth Lapine to obtain a refund of their franchise fee. Petitioner Gloria DeMann wrote a letter dated September 20, 1979, to Mr. Lapine regarding United *221 Laboratories, in which she stated that a check for $ 1,000 was enclosed. The check is not part of the record. By letter dated August 7, 1980, petitioners were advised by Mr. Lapine that "there might be some assets [of United Laboratories] left over after the distribution to the customers [who had paid for hair implant treatment]." To take advantage of such a possibility, Mr. Lapine suggested that petitioner obtain a default judgment against the individual principals of United Laboratories. By letter dated January 18, 1982, petitioner was advised by his attorney, Edward Janis, that a hearing on a default judgment against United Laboratories had been scheduled for January 27, 1982. Mr. Janis also advised petitioner that: "In all likelihood, we will probably be unable to collect anything on this judgment." Papaya King Company, Inc.
On August 18, 1978, petitioner and Morris Goldberg entered a stockholders agreement with Papaya King, Company, Inc. (Papaya King) an Hawaiian corporation. The record contains a copy of a certificate, dated August 25, 1978, for 2,000 shares of Papaya King stock. The certificate was issued to petitioners. Papaya King was formed to operate retail *222 stores to sell fast food and beverages. Each retail store was to operate through a separate corporation. During 1978, a retail store known as Papaya King of Hawaii was opened. On October 24, 1979, Morris Goldberg and petitioner terminated the stockholders agreement of August 18, 1978, and resigned as officers of Papaya King. The agreement states that such actions were taken to "induce Isoo Oshima to assume control of [Papaya King Company, Inc., and Papaya King of Hawaii]." Petitioner did not receive any payment for his stock when the stockholders agreement was terminated. On December 21, 1979, petitioners transferred, without consideration, their 2,000 shares of Papaya King stock to Morris Goldberg. The record does not reflect the reason for the transfer. The books and records of Papaya King were turned over to an accounting firm in Hawaii which managed the assets of Papaya King after petitioner and Mr. Goldberg terminated the stockholders agreement. The record does not reflect whether petitioners made any attempt to obtain the books and records of Papaya King. Farraday Farms, Inc.
On May 19, 1978, petitioners incorporated Farraday Farms, Inc. (Farraday Farms). Farraday *223 Farms issued 50 shares of stock to each of petitioners. Farraday Farms sold health food snacks, such as chopped nuts and raisins, through franchise distributors in the Eastern United States. On December 31, 1980, petitioners sold all their Farraday Farms stock to Benjamin Litman, who was the operations manager of Farraday Farms. The purchase price for the stock was $ 50,000, to be paid by the payment of $ 100 in cash at closing, and the remaining $ 49,900 at the rate of $ 1.00 as each case of Farraday Farms merchandise was packaged. Mr. Litman paid the $ 100 at closing. During January 1981, Mr. Litman informed petitioner that the balance of the purchase price could not be paid. Petitioners agreed to modify their agreement with Mr. Litman to allow the purchase price to be paid after the company had begun to show a profit. The additional $ 49,900, however, was never paid. OPINION The first issue we must decide is whether petitioners are entitled a $ 57,000 theft loss deduction for the license fee which petitioner paid to United Laboratories and related legal expenses. Respondent argues that petitioners are not entitled to such deduction because they have failed to prove that *224 a theft occurred under New York law. To be entitled to their theft loss deduction, petitioners must prove that they sustained a theft during the taxable year. Sec. 165(e). The term "theft" includes, but is not limited to, larceny, embezzlement, and robbery. Sec. 1.165-8(d), Income Tax Regs. Petitioners have the burden of proving that a theft occurred under the laws of the jurisdiction where the alleged theft loss took place. Paine v. Commissioner, 63 T.C. 736, 740 (1975), affd. without published opinion 523 F.2d 1053 (5th Cir. 1975); Monteleone v. Commissioner, 34 T.C. 688, 692 (1960). Petitioners argue that United Laboratories fraudulently induced petitioner to pay for a franchise which United Laboratories never intended to implement. We take petitioners' argument to mean that United Laboratories committed larceny under the laws of New York. New York law defines larceny as a wrongful taking, obtaining, or withholding of property from its owner with an intent to deprive the owner of such property. N.Y. Penal Law sec. 155.05(1) (McKinney 1988). Larceny includes obtaining property by *225 false pretenses. Id. at sec. 155.05(2)(a). Under New York law, larceny by false pretenses requires the following: (1) An intent to deprive the owner of property; (2) the making of a false representation; (3) knowledge that the representation is false; (4) obtaining the property of another, and (5) inducement of the owner to give up the property in reliance upon the false representation. People v. Chaitin, 462 N.Y.S.2d 61, 63 (App. Div. 1983), affd. 460 N.E.2d 1082 (N.Y. 1984). The misrepresentation must relate to a past or present fact, not a statement of future intention. People v. Churchill, 390 N.E.2d 1146, 1149 (N.Y. 1979). In the instant case, petitioners have failed to prove that petitioner relied upon any misrepresentation by United Laboratories when he paid the franchise fee. Petitioner testified that he visited the Ohio office of United Laboratories, talked to patients, and watched the hair implant process being performed. Subsequently, petitioner signed a franchise agreement and paid United Laboratories $ 50,000. Petitioner, however, failed to testify about any specific misrepresentation *226 that United Laboratories made in the process of selling him a franchise. Neither the fact that petitioner found United Laboratories to be closed nor the fact that he was unable to contact the principals of United Laboratories in order to obtain a refund, establishes the existence of a misrepresentation which induced petitioner to pay the franchise fee. Consequently, we are unable to conclude that petitioner was the victim of larceny by false pretenses under New York laws. Accordingly, we hold that petitioners are not entitled to a theft loss deduction for the fees paid to United Laboratories and related legal expenses. The next issue we must decide is whether petitioners are entitled to a deduction under section 1244 for a loss during taxable year 1979 in the amount of $ 100,000 for the worthlessness of their Papaya King stock. Petitioners argue that the stock became worthless in 1979 because petitioner and Mr. Goldberg terminated the Papaya King stockholders agreement on October 24, 1979, without receiving any payment for the stock. Respondent argues that petitioners have failed to prove that the Papaya King stock became totally worthless during 1979. Generally, a taxpayer *227 is entitled to capital losses on stock that becomes worthless during the relevant taxable year. Sec. 165(g). Section 1244(a), however, provides for ordinary losses on "Section 1244" stock, subject to certain restrictions. The provisions of section 1244 apply to losses from section 1244 stock which becomes worthless during the taxable year. Sec. 165(g); sec. 1.1244(a)-1(a), Income Tax Regs. Worthlessness is a question of fact determined by the facts and circumstances. Dustin v. Commissioner, 53 T.C. 491, 501 (1969), affd. 467 F.2d 47 (9th Cir. 1972); Watson v. Commissioner, 38 B.T.A. 1026, 1032 (1938). Petitioners have the burden of proving that the stock became worthless during the taxable year. Dustin v. Commissioner, supra; Watson v. Commissioner, supra.
In addition to the foregoing requirements, in order to prove that the stock became worthless during the year, petitioners must prove that the stock had value at the beginning of such year. Dustin v. Commissioner, supra; Anthony P. Miller, Inc. v. Commissioner, 7 T.C. 729, 745 (1946); *228 Rand v. Commissioner, 40 B.T.A. 233, 239-240 (1939), affd. 116 F.2d 929 (8th Cir. 1941); Morton v. Commissioner, 38 B.T.A. 1270, 1278 (1938), affd. 112 F.2d 320 (7th Cir. 1940). In the instant case, although petitioners proved that, during taxable year 1979, they terminated the stockholders agreement for Papaya King and that they did not receive any compensation for the stock, they failed to evince any evidence regarding Papaya King's value at the beginning of such year. No corporate books and records were entered into evidence, and petitioners have not indicated that they made any effort to obtain such books and records from their accounting firm in Hawaii. When a party fails to produce evidence which is available to such party, the failure gives rise to the presumption that, if produced, the evidence would be unfavorable. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Although the record in the instant case includes a photograph of the Papaya *229 King of Hawaii store and its employees, apparently taken sometime during 1978, petitioner did not testify that Papaya King engaged in any activity or operations at the close of 1978, the year prior to the year in issue. Consequently, on the scant record before us, we are unable to conclude that Papaya King had any value at the beginning of 1979. Dustin v. Commissioner, supra; Anthony P. Miller, Inc. v. Commissioner, supra; Rand v. Commissioner, supra; and Morton v. Commissioner, supra.Accordingly, we hold that petitioners have failed to prove that the Papaya King stock became worthless during 1979. Petitioners, therefore, are not entitled to a deduction under section 1244 for such stock. The final issue we must decide is whether petitioners are entitled to a deduction under section 1244 for a loss during taxable year 1980 in the amount of $ 100,000 for the worthlessness of their Farraday Farms stock. Respondent argues that petitioners have failed to prove that the Farraday Farms stock qualifies as section 1244 stock because they have not *230 shown that the stock was issued pursuant to a written plan as required under section 1.1244(e)-1, Income Tax Regs., as in effect for the years in issue. [1] Petitioners contend that respondent's argument presents a new issue not raised in the notice of deficiency. *231 The notice of deficiency raises specific reasons for the disallowance of petitioners' losses from their Farraday Farms stock. The notice of deficiency states as follows: (g) the deduction of $ 100,000.00 shown on your 1980 return as a loss resulting from worthless Section 1244 stock of Faraday [sic] Farms, Inc. is disallowed because the basis of the stock has not been established. Alternatively, it is further determined that a loss resulting from the worthless Section 1244 stock of Faraday [sic] Farms, Inc. is limited to $ 50,000.00 per Section 1244(b)(2) of the Internal Revenue Code. Accordingly, taxable income is increased $ 100,000.00 in 1980.
Where the record reveals that the Commissioner has given the taxpayer adequate notice that the Commissioner intends to raise a new reason or theory for the deficiency determination, we will consider the reason or theory even though it was not set forth in the notice of deficiency. Pagel, Inc. v. Commissioner, 91 T.C. 200, 211 (1988), affd. 905 F.2d 1190 (8th Cir. 1990); William Bryen Co. v. Commissioner, 89 T.C. 689, 707 (1987). Generally, *232 notice is adequate if the taxpayer is not surprised or prejudiced by the raising of such new reason or theory. Pagel v. Commissioner, supra at 212. At trial, petitioners' counsel clearly indicated that he knew from the time that he entered the case, 16 days prior to the trial, that respondent was going to raise the question of whether the Farraday Farms stock was issued under a written plan. Moreover, at trial, respondent requested that, in the event we found that respondent's argument is a new matter, we permit respondent to amend the answer. Petitioners did not object to allowing respondent to amend the answer to raise the new theory, so long as respondent has the burden of proof on the issue. We conclude that petitioners received adequate notice of respondent's intention to raise the issue of the written plan requirement, and we will grant respondent's motion to amend the answer for the purpose of raising the issue. Respondent argues that the burden of proof should be on petitioner because the issue regarding the requirement of a written plan is not a new matter. Rule 142(a) requires petitioners in this Court to bear the burden of proof, *233 except as to "new matters". A theory not set forth in the notice of deficiency is a new matter when it alters the original deficiency or requires the presentation by petitioner of different evidence. Vetco, Inc. v. Commissioner, 95 T.C. 579, 588 (1990); Achiro v. Commissioner, 77 T.C. 881, 890 (1981); Estate of Falsese v. Commissioner, 58 T.C. 895, 898-899 (1972); McSpadden v. Commissioner, 50 T.C. 478, 493 (1968); Papineau v. Commissioner, 28 T.C. 54, 57 (1957); Tauber v. Commissioner, 24 T.C. 179, 185 (1955). In the instant case, as respondent's argument does not alter the deficiency, we must decide whether respondent's argument would require petitioner to present different evidence. Respondent argues that no new evidence is required to prove that the Farraday Farms stock was issued under a written plan because petitioners would have to show that they satisfied all of the requirements of section 1244(e)-1, Income Tax Regs., as a part of their burden of proving their loss. We disagree. The notice *234 of deficiency specifically states that the loss was disallowed because petitioners had not established their basis in the Farraday Farms stock. No other reason or theory for the disallowance was set forth in the notice of deficiency, although the notice does advance an alternative theory, discussed below, that the loss should be limited to $ 50,000. It is quite obvious to us that the only documentary evidence necessary to corroborate petitioners' basis in the Farraday Farms stock would be a check or some other paper sufficient to persuade us that petitioners actually invested the amount they claimed. The requirement of a written plan as an element of establishing petitioners' entitlement to a section 1244 loss, therefore, is a wholly separate issue, requiring different evidence. Accordingly, we hold that respondent's argument that the stock was not issued under a written plan is a new matter upon which respondent has the burden of proof. Rule 142(a). The record in the instant case contains copies of minutes of Farraday Farms adopting a "PLAN TO OFFER COMMON STOCK FOR SALE PURSUANT TO IRC SEC. 1244". Respondent attempts to cast doubt upon such plan by pointing to certain *235 minor irregularities that are contained in the minutes. Although we are not free of doubt, on the record in the instant case, we hold that respondent has failed to persuade us that the Farraday Farms stock was not issued pursuant to a written plan. As to the primary reason set out in the notice of deficiency for the disallowance of the loss, i.e., that petitioners failed to establish any basis in the Farraday Farms stock, petitioners contend that certain documents and testimony offered at trial satisfy their burden of proof. The first document on which petitioners rely as proof of their investment is an unaudited financial statement of Farraday Farms dated May 31, 1980. The financial statement discloses the existence of capital stock in the amount of $ 100,000. Respondent contends that the financial statement is hearsay and does not fall within the hearsay exception for business records under rule 803(6) of the Federal Rules of Evidence.
Fed. R. Evid. 803(6) states: A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, *236 if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
Fed. R. Evid. 803(6) favors the admission of evidence if such evidence has any probative value. Matter of Ollag Constr. Equipment Corp., 665 F.2d 43, 46 (2d Cir. 1981). Respondent argues that the financial statement does not fall within the hearsay exception because it was not made "at or near the time" of the transaction. The financial statement, however, is dated May 31, 1980, which is sufficiently near in time to the sale of the stock to satisfy us that the "at or near the time" requirement of Fed. R. Evid. 803(6) has been met, especially in light of the corroborating testimony of Mr. Litman discussed *237 infra. Next respondent argues that the financial statement does not fall within the hearsay exception because the financial statement lacks trustworthiness. Respondent's argument is based on the statement of the accounting firm which prepared the financial statement. In the cover letter attached to the financial statement, the accounting firm stated: "Since the scope of our examination did not include independent verification of assets and liabilities, we are unable to express an opinion as to the above statement." In order for business records to be admissible, Fed. R. Evid. 803(6), requires that they have "sufficient indicia of trustworthiness to be considered reliable." Saks International, Inc. v. M/V Export Champion, 817 F.2d 1011, 1013 (2d Cir. 1987). The decision as to whether a document is trustworthy is within the trial court's discretion. Waddell v. Commissioner, 841 F.2d 264, 267 (9th Cir. 1988), affg. 86 T.C. 848 (1986). At trial, Mr. Litman testified that the financial statement was prepared in the regular course of Farraday Farms business and that he witnessed the financial *238 statement being prepared from the books and records of Farraday Farms. Mr. Litman also testified that he had discussions with the accounting personnel about what Farraday Farms records actually showed. Mr. Litman was the operations manager of Farraday Farms from approximately November 1978 until he purchased Farraday Farms in December 1980. As operations manager, he had control of the books and records of Farraday Farms and was responsible for knowing what had been invested in Farraday Farms. Based upon Mr. Litman's testimony we are satisfied that the financial statement has sufficient indicia of trustworthiness to be considered reliable. Accordingly, we hold that the financial statement is admissible under the business records exception of Fed. R. Evid. 803(6). Petitioner testified that petitioners' basis in the Farraday Farms stock was $ 100,000. The financial statement corroborates petitioner's testimony. Consequently, we hold that petitioners have satisfied their burden of proving that their basis in the Farraday Farms stock was $ 100,000. Respondent alternatively determined that petitioners' deduction for the Farraday Farms stock should be limited to $ 50,000 under section *239 1244(b)(2). Prior to November 6, 1978, the maximum amount allowed as an ordinary loss for a husband and wife filing a joint return was $ 50,000. Sec. 1244(b)(2). Congress amended section 1244(b)(2) to increase such limitation to $ 100,000 for stock issued after November 6, 1978, the date of the amendment's enactment. Revenue Act of 1978, Pub. L. 95-600, secs. 345(b) and (e), 92 Stat. 2844. Subsequently, Congress amended the effective dates of section 345(e) of the Revenue Act of 1978, supra, to allow the $ 100,000 maximum amount to apply to taxable years beginning after December 31, 1978. Technical Corrections Act of 1979, Pub. L. 96-222, sec. 103(a)(9), 94 Stat. 212. Apparently unaware of the amendment contained in the Technical Corrections Act, respondent incorrectly determined that petitioners' deduction is limited under section 1244(b)(2) to $ 50,000. The year in issue in the instant case is 1980. Consequently, under the Technical Corrections Act amendment, petitioners are entitled to a deduction for $ 100,000 for the Farraday Farms stock. [2]
*240 We have considered all remaining arguments and found them to be without merit. [3]
To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Section 1.1244(e)-1, Income Tax Regs., provides: Records to be kept and information to be filed with the return. (a) By the corporation. The plan to issue stock which qualifies under section 1244 must appear upon the records of the corporation. In addition, in order to substantiate an ordinary loss deduction claimed by its shareholders, the corporation should maintain records showing the following: (1) The persons to whom stock was issued pursuant to the plan, the date of issuance to each, and a description of the amount and type of consideration received for each; (2) If the consideration received is property, the basis in the hands of the shareholder and the fair market value of such property when received by the corporation; (3) Which certificates represent stock issued pursuant to the plan; (4) The amount of money and the basis in the hands of the corporation of other property received after June 30, 1958, and before the adoption of the plan for its stock, as a contribution to capital, and as paid-in surplus; (5) The equity capital of the corporation on the date of adoption of the plan; and (6) Information relating to any tax-free stock dividend made with respect to stock issued pursuant to the plan and any reorganization in which stock is transferred by the corporation in exchange for stock issued pursuant to the plan.
(b) By the Taxpayer. Any person who claims a deduction for an ordinary loss on stock under section 1244 shall file with his income tax return for the year in which a deduction for the loss is claimed a statement setting forth: (1) The address of the corporation that issued the stock; (2) The manner in which the stock was acquired by such person and the nature and amount of consideration paid; and (3) If the stock was acquired in a nontaxable transaction in exchange for property other than money -- the type of property, its fair market value on the date of transfer to the corporation, and its adjusted basis on such date.
In addition, a person who owns section 1244↩ stock in a corporation shall maintain records sufficient to distinguish such stock from any other stock he may own in the corporation.
2. Respondent did not argue that petitioners' deduction is limited to $ 50,000 based on the sale price of the Farraday Farms' stock to Mr. Litman. Consequently, we need not address such issue.↩
3. Two of these arguments respondent raises for the first time on brief. Respondent argues that petitioners have failed to prove that the Farraday Farms stock became worthless in 1980 and that Farraday Farms did not meet the requirements of a small business corporation under section 1244(c)(2). As stated above we will not consider a new theory not raised in the notice of deficiency unless the Commissioner gives adequate notice of such theory. Pagel Inc. v. Commissioner, 91 T.C. 200, 211 (1988), affd. 905 F.2d 1190 (8th Cir. 1990); William Bryen Co. v. Commissioner, 89 T.C. 689, 707 (1987). The record is silent as to whether petitioners received notice that respondent intended to raise such issues. Consequently, we will not permit respondent to raise such issues.↩